Good morning, Your Honors. May it please the Court, I'm Gloria Goldman, and I'm here to argue in the case of Lata v. Ashcroft. This case is about an immigration judge who doesn't seem to have understood the nature of domestic violence and the cycle of violence, and that's clear from his decision and his questioning during the case. It's also about a judge who superimposed his own mores to the analysis of a marriage and abuse rather than objectively reviewing the evidence that was brought before him during the case. And third, it's about a judge who acted as a prosecutor who interrupted more than 60 times during a case that lasted more than five years. There was an affirmance, as you know, without opinion, and I believe based on the regulations, this case should have been reviewed, the large record should have been reviewed by the board for them to analyze what actually did occur during this case. I'm going to spend time just setting you to the record, unless you interrupt me with questions. As far as the immigration judge acting as a prosecutor, he continuously interrupted the record. He – Why does any of this matter? I mean, ultimately what we have here is, unlike most immigration cases, we have – and leaving aside the domestic abuse issue, just dealing with the marriage fraud, we have contested evidence by your client on one hand and two other people on the other hand, and the I.J. chose to believe the other people. What are we available to do about that now? I think that we need to look at the case in the context of the attitude of the judge from the beginning, and it appears that he never considered the testimony of the petitioner, her witnesses, although he did discuss a couple of things regarding a couple of affidavits, and completely accepted the testimony of an admitted alcoholic. That's what a finder of fact does when you have conflicting testimony. I'm sorry? That's what a finder of fact does when you have conflicting testimony. But yet at the same time, he didn't discuss why he would not believe the credibility of the petitioner herself. And in his decision, it just doesn't seem that he really clarified what concerned him about her testimony when she consistently said that she never paid anyone to marry her. She met him. She fell in love with Mr. McVeigh and married him in good faith, lived with him for eight months. Mr. McVeigh had something entirely different to say about all of this. That's correct. So he listened to what she said, he listened to what he said, and he believed Mr. McVeigh, basically. But at the same time believed a man who he – a man – yeah, go ahead. He was – the I.J. was the adjudicator. That's correct. That task was given in the system. That was his role, was to determine who – to make a finding of fact. But it appears from the beginning of the record that – and I was not in the court when this occurred because I did not – I was not the attorney of record until now. And I've read the entire more than 500 pages of testimony. It just seemed from the beginning that he had a preconceived notion of the case. By reading the manner of his questioning, by reading the manner of his comments, by him – I heard the government earlier today say that, you know, the role of the I.J. is they're there to get the truth. They're inquisitors. And I appear in immigration court, and often the immigration judges will ask questions, and I believe they need to. This seemed to be more than that. This seemed to be repetitive. This seemed to be – Wouldn't it have to arise to a due process violation in terms of the way in which the hearing was conducted before we could simply disregard the finder of fact where you have – I mean, in most immigration cases, there are exceedingly odd fact-finding situations because there's only a one-sided story. But here there's not a one-sided story, and the I.J. has no choice but to choose between the two of them. And I don't disagree with the Court regarding that. That's – he is a prior fact. It just – the record is read in its entirety, and I'm marked every time he interrupted in the type of questions and comments he made. It was – from the beginning, there was an attitude that was pervasive through the entire hearing, and I think it damaged the hearing. But you never claimed – you've never raised a due process issue as such? You've never raised a due process issue? It was raised in the appeal. That there was a due process violation? That there was a due process violation. And before us, was it – has it been raised? I'm sorry? Before us, has it been raised? In the brief? I believe so. Regarding the manner in which the judge conducted the hearing? Yeah. That's what I want to look at. What I'll do is I'll save – to save time, I'll save a couple minutes for rebuttal and come back with it, rather than take the time to sort through the amount. One other question, which may sound a little out of left field, but there's a question, actually, as to our jurisdiction, or is there a question as to our jurisdiction? Under 8 U.S.C. 1186-D4, which is the provision that you're operating under here, the hardship waiver, and there's language at the end that says that in applicant applications under this paragraph, the Attorney General shall consider any credible evidence. The determination of what evidence is credible and the way to be given to that evidence shall be within the sole discretion of the Attorney General. And the question, which you may not have thought about, maybe we need to have brief time. Regarding the discretionary waiver? Yeah. I believe that – that – I believe that from the case law I read that you can still apply the facts to the legal issues regarding the waiver. Again, I'll take a look at that when I sit down. But that's exactly what you're not asking us to do. You're asking us to – unless there is a due process issue, you're asking us precisely to say that the I.J. made an error as to what evidence is credible. So do we have a problem is the question. But even doing that, even assuming – I mean, we're not just allowed to do that. Well, I break – I've thought this case over quite a bit, especially the last couple of days before I came here. And I break it down into two parts. One is it appears that the judge didn't believe that this was a bona fide marriage. I mean, that's clear. And then it appears that the judge believes that the issues of abuse that come to the issues of the bona fides of the marriage because of things that – the basis of his decision. There are two parts to it. And I feel that if this Court agrees that maybe that he was in error, then it should be sent down and at least let the board take a look at this evidence and make a decision whether they should remand it back to the judge with instruction. Was it admitted by McVeigh that there was domestic violence? He denied it. The only admission – Is the issue of domestic violence similar to the other credibility issue? Well, what I found interesting is that even though there were three letters that – from experts in the field regarding the domestic violence, even though they were admitted into the record, the judge completely disregarded that and never really discussed it clearly as to why he would accept the – just the statements or the admissions of a – and the answers of a man who had admitted to the fact that he would drink to the point of being in a stupor, yet not abuse physically or with extreme cruelty a young woman. You're arguing that the I.J. was bound by the expert opinion produced by one side. No, but I believe that in his opinion, he was bound by writing a cogent credibility assessment, and I didn't see that in the opinion at all. Would you like to take the balance of your time? Yes, I would, because I want to look up. Thank you. Thank you. Thank you. Good morning. I'm Edward Durant. I represent the United States. With respect to Judge Berzon's question regarding jurisdiction, this is a transitional rules case, not a permanent rules. The Respondent did not argue that the Court lacked jurisdiction over this discretionary decision. If the Court would like to meet – Well, there is that language. I mean, if you read – if you read the language of – what is it? It's – yeah, 1186AC4. If you read that with the language of 1105A, it's – It's certainly arguable, Your Honor. Perhaps I should have addressed it in my briefing. No, no, no. Well, no, I don't think necessarily. I mean, even if we were – if we just were applying the 1105A, you know, substantial evidence, in a substantial evidence review, at least my understanding is we wouldn't be reweighing the evidence anyway. You know, we don't reweigh evidence in a substantial evidence test. I don't really see in this context here – I don't read this as a jurisdictional, you know, kind of issue. I will not raise that during my argument. It sort of just relates to our standard of how we're doing things. But just to clarify one other thing. You said it was a transitional rules case. And the reason that matters, as I understand it, is because the transitional rules limit the no appeal discretionary decision to certain sections, and this isn't one of them. Correct. And I didn't see – So technically speaking, it probably doesn't apply. I didn't think it did. And if I remember correctly while writing the brief, I didn't feel the need to address that to the Court at the time. With respect to Petitioner's arguments that the judge was unfair or seemed to have a bad attitude or the due process arguments, Respondent does not believe that that issue was raised adequately to either the Board or this Court. The Court is free to disagree, but upon review of the record – I read the brief. I don't recall a due process argument of this nature. I don't believe it's raised or properly brought to the Court. It was a due process argument, but not – Not with respect to whether or not the judge was unfair. And the seminal issue here is whether or not Petitioner met her burden for the hardship waiver. She had to show that her marriage was, one, in good faith, and, two, during that time period, she was subject to abuse. There was a lot of evidence that went before the immigration judge, and in making her decision or his decision, she reviewed the entire record, including the demeanor of the witnesses, the consistency of the testimony. With respect to the good faith marriage, again, it was her burden. Back in 1993, Ms. Lotta and her husband, her then-husband, Mr. McVeigh, went for an interview. They were interviewed separately. At that time, when faced with inconsistencies, Mr. McVeigh came clean, so to speak, and said the marriage was indeed a ruse. It's not quite accurate to say, and it's an overstatement by the Petitioner to say, that he outrageously alleged that the marriage was false. Exhibit 4A will show that, in reality, what happened was, during the investigation, when confronted with some inconsistencies, this gentleman broke down and told the truth, or what appeared to be the truth. So, again, she did meet her burden with that respect, to the good faith nature of the relationship. With respect to the abuse, she alleged this after, in fact, that the proceedings were in play. And there's nothing objective that would show abuse. She has two letters from acquaintances who say that they witnessed Mr. McVeigh, every time they went over there, drink and beat Ms. Lotta. But, again, none of these witnesses were produced. In fact, Ms. Shelley Jordan, who says that Mr. McVeigh was violent and she encouraged Ms. Lotta to go to the police, earlier on page 727 of the record had written a letter in support of their marriage and implied that he was a good person. So that letter really can't be given any weight. With respect to the medical reports, if you look at every medical report for Ms. Lotta that's in the record, I know the record is large, and there are several pages in there where you can review the medical records, there is no evidence whatsoever of any trauma or any bruising or anything associated with the nosebleeds or headache. If anything, it looks like a common cold or flu symptoms. So, again, it is her burden to prove abuse, and there is no objective evidence in the record that would lead to that. In fact, any letters that she has are after the fact that appear to be her own statement to a doctor. So the government argues that she has not met her burden. If there are no further questions, this concludes the government's presentation. Is there anything the Court would like to ask? Thank you. In clarification, the due process argument in the brief was regarding the affirmance without opinion, and I appreciate the question. In addition, I'll just bring out a couple of extra facts that are in the case. There are two letters, one from a counseling center, Downey Park Counseling Associates, these are in the, when we're talking about these documents, they're exhibits 5E, 5F, 5G, and one of the documents is the document from the doctor who examined her for sinusitis and the bloody nose. But there are also, there's a letter from a counselor at Women's Haven Center or Heaven Center, depending on who's typing the transcript, and there was a letter admitted from Downey Park Counseling Associates from a doctor. And they were admitted in the record, the letters that Mr. I'm trying to think of your last name, Durant, referred to in regard to the two letters of support, one that had, there were two letters from one woman, one letter saying that it was a good faith marriage, and then the other supporting the issue of violence. These are two different times, there was a time when nobody knew there was abuse, according to the testimony from everybody, and the nature of domestic violence is that. Often it's hidden for a long time, and people don't go for counseling, as you know, I don't need to tell you this, until time after that. I'm going to take up no more time. Thank you very much. Thank you. Thank you.
judges: Paez, Berzon, Bea